# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim,<br><br>Plaintiff,<br><br>v.<br><br>KASHL CORPORATION, an Oregon corporation dba Radisson Hotel San Diego Rancho Bernardo, RADISSON HOTELS INTERNATIONAL, INC., a Delaware corporation,<br><br>Defendants. | CASE NO. 18cv2581 GPC NLS<br><br>**ORDER**<br><br>**(1) DENYING MOTION TO DISMISS [ECF No. 9];**<br><br>**(2) DEFERRING RULING ON MOTION REQUESTING ORDER DECLARING PLAINTIFF A VEXATIOUS LITIGANT [ECF No. 3];**<br><br>**(3) TO SHOW CAUSE.** |

On December 15, 2018, Plaintiff Theresa Brooke ("Plaintiff") filed a verified first amended complaint against Defendants Kashl Corporation ("Kashl") and Radisson Hotels International, Inc., alleging violations of the Americans with Disabilities Act, the California Unruh Civil Rights Act, and the California Disabled Persons Act. (ECF No. 6.) Plaintiff's suit has generated two motions, both presently before the Court. The first is Kashl's Rule 12(b)(1) motion to dismiss the first amended complaint for lack of jurisdiction (ECF No. 9), which Plaintiff opposes (ECF No. 14).[1] The second is Kashl's

---

[1] The Court-ordered briefing deadline on Plaintiff's opposition to Kashl's motion to dismiss was January 3, 2019. Plaintiff belatedly submitted an opposition on January 8, 2019, apologizing that she

1

motion requesting an order declaring plaintiff a vexatious litigant (ECF No. 3), which has not been opposed.

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the motion to dismiss suitable for adjudication without oral argument. For the reasons set forth below, the Court **DENIES** Kashl's motion to dismiss, **ORDERS** Plaintiff to show cause why she should not declared a vexatious litigant, and **DEFERS** ruling on Kashl's motion requesting an order declaring plaintiff a vexatious litigant.

**A. Factual History**

Defendant Kashl is an Oregon corporation which does business as Radisson Hotel San Diego Rancho Bernardo ("Radisson Rancho Bernardo"), located at 11520 Western Bernardo Court, San Diego, California 92127. The Radisson Rancho Bernardo is a public accommodation which offers public lodging services. Kashl, along with co-defendant Radisson Hotels International, Inc., a Delaware corporation, co-operates the website for the Radisson Rancho Bernardo.

Plaintiff resides in Pinal County, Arizona and ambulates with the aid of a wheelchair due to loss of a leg. (ECF No. 6, at 2.) Although Plaintiff lives in Arizona, she and her husband "are avid travelers to California," and she "makes frequent trips to San Diego." (ECF No. 6, at 4, 5). On or about October 30, 2018, Plaintiff was in San Diego and went to the Radisson Rancho Bernardo to book a room. (*Id.* at 4.) However, Plaintiff alleges that when she pulled up to the passenger loading zone, there was no marked access aisle between the loading zone and the curb from which she could navigate her way to the entrance of the hotel in her wheelchair. (*Id.*) Plaintiff alleges that it is a violation of Section 503.3 of the 2010 ADA Standards of Accessible Design ("2010 Standards") for a public accommodation not to have an access aisle at least 60 inches

---

mistakenly followed the briefing schedule in the Local Civil Rules. (ECF No. 13, at 1 n.1.) The Court will exercise its discretion to overlook the procedural defect in Plaintiff's opposition and will decline Kashl's invitation to grant its motion to dismiss on this basis.

wide, and that the lack of such an access aisle at the Radisson Rancho Bernardo caused her to be deterred from returning to the hotel. (*Id.* at 4–5.)

As a result of encountering that barrier, Plaintiff did not book a room at the Radisson Rancho Bernardo in October 2018. (*Id.* at 5.) Thereafter, Plaintiff communicated with Kashl with respect to the alleged Section 503.3 non-compliance. According to Plaintiff, counsel for Kashl advised Plaintiff that her claim was not factually accurate, and stated that "[t]here is no passenger loading zone to remediate." (*Id.* at 6.)

Plaintiff, apparently relying on this representation, returned to the hotel on or about December 11, 2018. (*Id.*) Plaintiff indicates that she was in San Diego that week for settlement conferences and a brief vacation to visit local attractions, like the nearby Naval base. (*Id.*) Prior to this second visit, Plaintiff accessed the website maintained for the Radisson Rancho Bernardo and found that she was unable to book an accessible room or suite, allegedly in violation of 28 C.F.R. 36.302(e)(1). During the drive to the hotel, Plaintiff phoned ahead to book a room and was advised that there were in fact no accessible rooms for rent. (*Id.*) Plaintiff alleges that this was a violation of section 224.5 of the 2010 Standards. When Plaintiff arrived at the hotel, she re-encountered the original accessibility barrier at the passenger zone. (*Id.* at 7.) Again deterred, Plaintiff did not lodge at the Radisson Rancho Bernardo and instead found a different hotel at which to stay.

As a result of these events, Plaintiff claims she is "extremely embarrassed and insulted at the lack of access at Defendant's hotel and on Defendants' website." (*Id.*). Notwithstanding these incidents, Plaintiff maintains that "if the barriers are removed, she will lodge at Defendant's hotel and/or revisit the hotel to obtain access to the Defendant's property." (*Id.* at 5, 7.) To wit, Plaintiff avers that she "will make a third visit to the hotel and hopefully be able to lodge there in March, which is when she and her husband will be returning to San Diego again." (*Id.* at 7.)

**B. Procedural Background**

On November 10, 2018, Plaintiff filed a complaint which was superseded by her verified first amended complaint, filed December 15, 2018. (ECF No. 6.) This first amended complaint alleged violations of Title III of the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102 *et seq.* and the regulations implementing the ADA, 28 C.F.R. §§ 46.101 *et seq.*; the California Unruh Civil Rights Act, California Civil Code sections 51, 52, and the California Disabled Persons Act, California Civil Code sections 54-54.3. The first amended complaint sought, *inter alia*, statutory damages, declaratory relief, attorney's fees, and injunctive relief.

On December 4, 2018, Kashl filed a motion (1) seeking dismissal pursuant to Rule 12(b)(1) for Plaintiff's lack of standing to pursue injunctive relief under the ADA, and (2) requesting an order declaring Plaintiff a vexatious litigant. (ECF No. 3.) Although the part of that motion which sought to dismiss Plaintiff's original complaint was mooted by virtue of Plaintiff's amended complaint, the latter portion pertaining to whether Plaintiff ought be declared a vexatious litigant remains pending before the Court. (ECF No. 8.) Later, on December 20, 2018, Kashl filed a motion to dismiss Plaintiff's first amended complaint, reiterating the arguments made in their earlier Rule 12(b)(1) motion as to Plaintiff's lack of standing. (ECF No. 9.)

**I.     Discussion**

The two live motions before the Court revolve around a singular set of contentions. At bottom, Kashl contends that Plaintiff is a serial ADA litigant who, despite professing an intent to return to non-ADA compliant public accommodations, has no such plans, and is abusing both the ADA statute and the court system as a way to extract "nuisance settlements" from an incredibly high number of hotels and other businesses in Arizona and California. (ECF No. 9-1, at 2.) Kashl posits that the 605 ADA complaints Plaintiff has filed in the California federal courts since 2016, coupled with the fact that she lives over 400 miles away from the Radisson Rancho Bernardo, belie her claim that she actually intends to return to patronize the hotel, and that she is suffering a continuous injury as a

4

result of any alleged ADA non-compliance at the Radisson Rancho Bernardo (or any other property sued, for that matter).[2] Rather, taken in the aggregate, Kashl insists that Plaintiff's litigation history presents a tale of systematic extortion which warrants both dismissal of the action in the instant case, as well as a global pre-filing order restricting Plaintiff from further ADA claims within the United States District Court for the Southern District of California.

Plaintiff's opposition to Kashl's motion to dismiss did not address the 605 other lawsuits she has filed in the California district courts. Instead, Plaintiff asks the Court to focus only on whether she has made a sufficient showing of a concrete plan to return to the Radisson San Bernardo. (ECF No. 13, at 2.) Plaintiff points out that, though she need not have personally visited the hotel to establish a sincere likelihood of returning there in the future, her attempts to lodge at the Radisson San Bernardo in October and December of 2018 are good faith proof of her anticipated return in March of 2019.

---

[2] These facts are judicially noticed from documents furnished to the Court by Kashl. Specifically, Kashl requested judicial notice of (1) the distance between Pinal, Arizona and the Radisson Rancho Bernardo, (2) a February 18, 2016 order issued by Judge Bencivengo dismissing the Plaintiff's case for lack of jurisdiction in No. 3:16-CV-00309-CAB-KSC, (3) three ADA complaints filed by Plaintiff against various hotels in California, (4) Pacer case search query data for cases filed by Plaintiff in the four judicial districts in California since 2016 (605 in total) and cases filed in the district of Arizona (176 in total), and (5) a Public Reproval from the State Bar Court of California, issued on September 26, 2018, against Peter Kristofer Strojnik, California Bar license number 242728. (*See* ECF No. 9-3.). Pursuant to the applicable federal rules of evidence, Kashl's request shall be granted in full.

Federal Rule of Evidence 201(b) states that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). "Public records and government documents are generally considered not to be subject to reasonable dispute . . . . This includes public records and government documents available from reliable sources on the Internet." *Jarvis v. JP Morgan Chase Bank, N.A.*, No. CV 10-4184-GHK (FMOX, 2010 WL 2927276, at *1 (C.D. Cal. July 23, 2010) (citation and quotation marks omitted).

Items 1-4 have not been opposed by Plaintiff. Because they are not subject to reasonable dispute, and are, with the exception of item 1, matters of public record, items 1-4 are noticed. Although item 5, i.e., the Public Reproval issued by the State Bar Court of California (ECF No. 9-12) is also a permissible public record, the Court does not find it pertinent to its analysis at this juncture and will defer giving judicial notice thereto.

5

With the parties' contentions in mind, the Court will turn first to the motion to dismiss, and then the motion to declare Plaintiff a vexatious litigant.

**A. Motion to Dismiss**

**1. 12(b)(1) Legal Standard**

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th Cir. 2008). Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Thus, federal subject matter jurisdiction must exist at the time an action is commenced. *Mallard Auto. Grp., Ltd. v. United States*, 343 F.Supp.2d 949, 952 (D. Nev. 2004).

Attacks on jurisdiction pursuant to Rule 12(b)(1) can be either facial, confining the inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the complaint. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves,

would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Here, because Kashl is questioning the veracity of the allegations stated in Plaintiff's first amended complaint (and doing so via extrinsic evidence), it appears that Kashl is bringing a factual attack on jurisdiction. *See Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x. 269, at *1 (9th Cir. 2009) (unpublished) (noting that factual attacks on jurisdiction may be made against ADA actions "when the defendant submits evidence challenging the jurisdiction along with its motion to dismiss").

Upon a factual attack on jurisdiction, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039. Once a moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. *Savage*, 343 F.3d at 1040, n.3 (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989)); *see also Trentacosta v. Frontier Pacific Aircraft Industries, Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987) (stating that on a factually attacked 12(b)(1) motion to dismiss, the nonmoving party's burden is that of Rule 56(e)). However, on a factual attack, the court may not "resolve genuinely disputed facts where the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Kohler v. CJP, Ltd.*, 818 F. Supp. 2d 1169, 1172 (C.D. Cal. 2011) (citations and quotation marks omitted).

### 2. Standing and the ADA

"Though its purpose is sweeping . . . and its mandate 'comprehensive,' 42 U.S.C. § 12101(b)(1), the ADA's reach is not unlimited. Rather, as with other civil rights statutes, to invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement[s] of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citing U.S. Const. art. III, § 2;

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); (remaining citation omitted; ellipses added)). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560.

Three elements must be present for a Plaintiff to have standing: (1) the Plaintiff must have "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) there must be a "causal connection between the injury and the conduct complained of;" and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. When a plaintiff seeks injunctive relief, there is an additional requirement of showing "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way . . . [t]hat is, . . . a real and immediate threat of repeated injury." *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), and *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)) (internal quotations omitted). In the context of civil rights statutes, such as the ADA, courts are instructed to take a "broad view" of constitutional standing. *Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1039–40 (9th Cir. 2008) (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

### 3. Analysis

Although Kashl challenges all three elements of standing, the crux of the argument is that Plaintiff has not suffered an injury-in-fact sufficient to establish standing for injunctive relief, and that the two other standing prongs cannot be met without such an injury.

#### a. Actual or Imminent Injury

In the context of ADA discrimination claims, the Ninth Circuit recognizes a deterrent effect doctrine. For the requirement that the injury be actual or imminent, "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.'" *Doran*,

8

524 F.3d at 1040 (quoting *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002)). In other words, injury is imminent when a plaintiff "is threatened with harm in the future because of existing or immediately threatened non-compliance with the ADA." The Ninth Circuit recently clarified that a plaintiff need not personally encounter a barrier in order to be injured. Instead, "[i]t is the plaintiff's 'actual knowledge' of a barrier, rather than the source of that knowledge, that is determinative." *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1099 (9th Cir. 2017). Indeed, the Ninth Circuit has held that "[o]nce a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts." *Doran*, 524 F.3d at 1042, n.5.

Plaintiff demonstrated both an actual and imminent injury by furnishing her verified first amended complaint, which contains sworn statements submitted under the penalty of perjury, indicating that she had personally encountered a barrier at Kashl's establishment when she visited the premises on approximately October 3, 2018, and again on or about December 11, 2018. (ECF No. 6, at 6.) Her verified first amended complaint also avers that she was deterred from booking rooms with the Radisson Rancho Bernardo on both occasions. Plaintiff has satisfied the actual or imminent injury component of standing, because she has both actual knowledge of a barrier, and because she had in fact been deterred (twice) by the obstructions named in her complaint.

### b. Real and Immediate Threat of Repeated Injury

As discussed *supra*, a plaintiff seeking injunctive relief must also show that there is a "real and immediate threat of repeated injury." *Lyons*, 461 U.S. at 111. "To demonstrate a real threat of future harm, the plaintiff must establish a likelihood of returning to the defendants' premises." *D'Lil v. Stardust Vacation Club*, No. CIV-S-00-1496DFL PAN, 2001 WL 1825832, at *3 (E.D. Cal. Dec. 21, 2001); *see also Gastelum v. Canon*

*Hospitality LLC*, No. CV-17-02792-PHX-GMS, 2018 WL 2388047, at *6 (D. Ariz. May 25, 2018) (recognizing that real and immediate threat of repeated injury entails a showing of "a legitimate intent to visit again the public accommodation in question").

Kashl contends that Plaintiff has no legitimate intent to visit its hotel, and hence, no real or immediate threat of repeated injury. Specifically, it maintains that Plaintiff cannot prove a likelihood of future injury pursuant to the four-part test for ADA standing articulated in cases like *Molski v. Mandarin Touch Restaurant,* which evaluates (1) the proximity of the place of the public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant. 385 F. Supp. 2d 1042, 1045 (2005) *aff'd in part, dismissed in part sub nom. Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007)).

Pursuant to the four-part test employed in *Molski v. Mandarin Touch Restauraunt,* Kashl points out that Plaintiff lives over 400 miles away from its hotel, a distance considerably greater than the 280 miles between the plaintiff and the defendant's property in *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004), where no likelihood of future harm was established on the basis of the sizable stretch between the alleged situs of harm and the plaintiff's residence. With respect to Plaintiff's past patronage, Kashl contends that Plaintiff's visits were "insincere[]" because Plaintiff came by only to search for other alleged barriers. (ECF No. 9-1, at 7.) In addition, Kashl objects that Plaintiff has no genuine or "concrete plans to return" *Lujan*, 504 U.S. at 564 n.2, and that a serial plaintiff's extensive litigation history, such as Plaintiff's, can undermine her professed intent to return. Finally, Kashl suggests that Plaintiff's trips to California are not frequent enough to confer standing.

At the outset, the Court must note that even Kashl's own cited authorities indicate that the four aforementioned factors "are not definitive." *Gastelum*, 2018 WL 2388047, at *7. For example, the fact that "the public accommodation being sued is far from the

plaintiff's home" is not dispositive, as the Ninth Circuit has "found actual or imminent injury sufficient to establish standing where plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best Western Encina Lodge & Suites*, 539 F.3d 1031, 1037 (9th Cir. 2008) (citing *Doran*, 524 F.3d at 1037–38 (plaintiff demonstrated actual or imminent injury where he established intent to return to 7-Eleven store 550 miles from home on his future trips, once the barriers to access were removed)). Indeed, the key inquiry remains whether Plaintiff had a likelihood of returning to the Kashl's premises. *D'Lil v. Stardust Vacation Club*, 2001 WL 1825832, at *3. To satisfy this standard, Plaintiff "must demonstrate her intent to return to the [San Diego] area and, upon her return, her desire to stay at the [Radisson Rancho Bernardo] if it is made accessible." *Best Western*, 538 F.3d 1031, at 1037.

Here, Plaintiff has furnished a verified first amended complaint that she continues to be deterred by the barriers at the Radisson, and that, notwithstanding all of the barriers there, "Plaintiff will make a third visit to the hotel and hopefully be able to lodge there in March [of 2019], which is when she and her husband will be returning to San Diego again." (ECF No. 6, at 7.) A verified complaint is submitted under pain of perjury, and may be used as an opposing affidavit so long as the allegations are based on personal knowledge. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995). Because in resisting a factual attack on jurisdiction the Court must credit Plaintiff's competent evidence as much as it would credit that proffered by a party resisting summary judgment under Rule 56, the Court finds that Plaintiff has met her burden of demonstrating an intent to return to the Radisson San Bernardo.

This case bears similarity to *Best Western*, where the Ninth Circuit found sufficient evidence that the plaintiff, D'Lil intended to return to the Best Western Encina, located in Santa Barbara. There, the Ninth Circuit held that D'Lil had amply demonstrated her intent to return based on, *inter alia*, her testimony that she had a history of making trips to the

11

Santa Barbara area, visited approximately 1-3 times a year, and because she had testified to three upcoming trips. 538 F.3d at 1037–38. D'Lil declared that she "would like to return and use the subject Best Western Encina on a spontaneous, but full and equal basis," and explained that her preference for the hotel was "based on the hotel's proximity to downtown, its accessibility from the freeway, and its amenities, including lush gardening and fresh country linen quilts." *Id*. at 1038 (some quotation marks omitted).

The factors compelling standing in *Best Western* are equally applicable here. That Plaintiff did not proffer any personal anecdotes about the Radisson Rancho Bernardo's fresh country linen quilts or exquisite horticulture, is in part, the Court surmises, because according to her allegations, she was deterred from booking a room with the hotel due to its structural barriers. Nonetheless, she has averred that she wants to stay at the Radisson Rancho Bernardo because she visits the area often and wishes to "diversify her lodging during her visits" to San Diego. (ECF No. 6, at 6.) And, she has expressed a concrete desire to return to the Radisson Rancho Bernardo in March of this year. (*Id.* at 7.) This expression of intent is bolstered by Plaintiff's sworn testimony that she visits San Diego frequently, and that she and her husband are both "avid travelers to California." (*Id.* at 4.) While Plaintiff's sworn assertions are not as robust as the testimony offered in *Best Western*, they are nonetheless sufficient to carry Plaintiff across the standing threshold, at least at this juncture. *See e.g., Fiedler v. Ocean Properties, Ltd.*, 683 F. Supp. 2d 57, 71–73 (D. Me. 2010) (holding, in a close-call decision, that the plaintiff's sworn affidavit testimony stating that he intended to vacation and stay at the defendant's hotel if and when it was brought into ADA compliance "minimally sustain[ed] his burden" of establish standing for the purposes of summary judgment).

None of Kashl's contentions detract from this conclusion. First, Kashl seems to argue that no legitimate intent to return can be predicated upon a past trip to a public accommodation if that trip was solely motivated by an intent to pursue ADA litigation.

12

(ECF No. 9, at 6.) However, governing caselaw provides that "motivation is irrelevant to the question of standing under Title III of the ADA." *CREEC*, 867 F.3d at 1102.

Second, Kashl protests that Plaintiff has not identified what, if anything, draws her to the Rancho Bernardo Radisson, as opposed to any other hotel in the San Diego area. Kashl invokes the decision in *Parr v. L&L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065 (D. Haw. 2000), where the plaintiff proved his concrete plans to return in part because he had "developed a taste for [defendant] L&L's food." *Id.* at 1079. But, as other courts have observed, a special predilection for the service of any particular public accommodation is not dispositive. For example, in *Harris v. Del Taco, Inc.*, the district court read the facts of *Parr* as establishing a sufficient, but not necessary, condition. 396 F. Supp.2d 1107, 1115 (C.D. Cal. 2005) ("Mr. Harris need not love Del Taco food in order to sue any Del Taco restaurant. Mr. Harris could have demonstrated his intent to return in any number of ways.")

Third, Kashl points to the welter of Plaintiff's other ADA filings, in this judicial district and beyond, as belying a legitimate intent to return to any of the 605 hotels sued in the Californian district courts. (ECF No. 9, at 6.) But, Plaintiff's professed intentions to visit the other hotels—sincere or otherwise—are not before this Court. For the purposes of this Rule 12(b)(1) motion, the Court is only concerned whether Plaintiff has adduced enough support for the proposition that she is likely to return to the Radisson. *See Best Western*, 538 F.3d at 1040 (holding that "whether or not D'Lil visited the hotels in Redding [i.e., hotels which D'Lil sued but never returned to] says little about her intent to visit the Best Western Encina," and cautioning courts against using past ADA litigation history to impugn credibility and sincerity of intent to return). And as explained *supra*, this she has sufficiently done.

Finally, Kashl takes issue with the veracity of Plaintiff's sworn statements. Pointing to Plaintiff's extensive litigation history, Kashl asks the Court to "find that Plaintiff's and her counsel's litigation history undercuts her credibility and belies a legitimate intent to

13

return to the subject Hotel." (ECF No. 9-1, at 9.) Kashl invites the Court to interrogate the sincerity and honesty of Plaintiff's professed intent to return. The Court acknowledges Kashl's concerns as well-taken. Indeed, there is much in the record before the Court which suggests that Plaintiff is not being entirely candid when she says she intends to come to the Rancho Bernardo Radisson in March, and that she also has an intent to return to any number of other hotels she has sued in the San Diego area. However, "[i]f [Plaintiff] is going to be disbelieved on the issue of standing, it should be in the context of factfinding, not in the context of [a Rule 12(b)(1) motion]." *Fiedler*, 683 F. Supp.2d at 73 (declining to "draw conclusions about Mr. Fiedler's credibility," and to "disbelieve his statements about his past practices and his present intentions" upon a motion for summary judgment).

Kashl's motion to dismiss for lack of standing is accordingly **DENIED**.[3]

## B. Motion to Declare Plaintiff a Vexatious Litigant

The Court next turns to Kashl's motion to declare Plaintiff a vexatious litigant. (ECF No. 3.) Kashl urges that Plaintiff's multitudinous filings of ADA claims in the California district courts has been vexatious, ingenuine, and abusive. (*Id.* at 11.) Kashl takes issue with Plaintiff's serial litigation against hotels and other entities, pointing out that Plaintiff has alleged the same fact patterns, implausible intents to return, and claimed similar injuries in each instance. (*Id.*) Kashl contends that Plaintiff and Plaintiff's counsel are "part of [a] scheme of systematic extortion," similar to the one identified by the district court in *Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d 860, and has moved for an order declaring Plaintiff a vexatious litigant, and requested Rule 11 sanctions.

Although Kashl has not clearly articulated what form it hopes any resulting order might take, the Court understands—based on Kashl's invocation of *Molski v. Mandarin Touch Restaurant*—that it seeks a pre-filing order which would require Plaintiff to file a

---

[3] That being said, "the Court retains an obligation to monitor Plaintiff's standing to bring suit," *Fiedler*, 683 F. Supp. 2d at 73, and Kashl is independently welcome to raise the standing issue at any later point in the proceedings. After all, "a disabled individual claiming discrimination must satisfy the case or controversy requirement[s] of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman*, 631 F.3d at 946.

14

CASE NO. 18cv2581 GPC NLS

motion for leave to file any complaint invoking the ADA within the Southern District of California. *See Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d at 868 (requiring that, "[b]efore filing any new litigation alleging violations of Title III of the ADA in the United States District Court for the Central District of California, Molski is hereby ordered to file a motion for leave to file a complaint").

### 1. Legal Standard

It is well-established that "[f]ederal courts can 'regulate the activities of abusive litigants by imposing carefully tailored restrictions under . . . appropriate circumstances.'" *Ringgold-Lockhart v. Cty. of Los Angeles,* 761 F.3d 1057, 1061 (9th Cir. 2014) (quoting *De Long v. Hennessey*, 912 F.2d 1144, 1447 (9th Cir. 1990)). "Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *De Long*, 912 F.2d at 1148. Thus, "[p]ursuant to the All Writs Act, 28 U.S.C. § 1651(a), 'enjoining litigants with abusive and lengthy [litigation] histories is one such ... restriction' that courts may impose." *Ringgold-Lockhart*, 761 F.3d at 1061 (alteration in original) (quoting *De Long*, 912 F.2d at 1147).

It is, however, equally well-known that "[o]ut of regard for the constitutional underpinnings of the right to court access, 'pre-filing orders should rarely be filed, and only if courts comply with certain procedural and substantive requirements.'" *Ringgold-Lockhart*, 761 F.3d at 1062 (quoting *De Long*, 912 F.2d at 1147). In *De Long v. Hennessey*, the Ninth Circuit "outlined four factors for district courts to examine before entering pre-filing orders." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007).

> First, the litigant must be given notice and a chance to be heard before the order is entered. Second, the district court must compile "an adequate record for review." Third, the district court must make substantive findings about the frivolous or harassing nature of the plaintiff's litigation. Finally, the vexatious litigant order "must be narrowly tailored to closely fit the specific vice encountered."

15

CASE NO. 18cv2581 GPC NLS

*Molski v. Evergreen Dynasty*, 500 F.3d at 1057 (citations omitted). The first two factors speak to "procedural considerations" that the district court must attend to before imposing a pre-filing order, and the second two are "substitutive considerations" that "help the district court define who is, in fact, a 'vexatious litigant.'" *Id.* at 1058. With respect to the substantive considerations, the Ninth Circuit has held that Courts may engage in the five-factored inquiry articulated by the Second Circuit in *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). *See Molski v. Evergreen Dynasty*, 500 F.3d at 1058 ("[T]he Second Circuit's five-factor standard provides a helpful framework for applying the two substantive factors (factors three and four) of our own four-factor standard.") The *Safir* framework investigates

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

792 F.2d at 24.

### 2. Discussion

Kashl filed the motion requesting order declaring plaintiff a vexatious litigant on December 4, 2018 in conjunction with its motion to dismiss Plaintiff's original complaint. The Court set a briefing schedule which calendared a hearing on February 1, 2019 for both motions, and ordered that any opposition from Plaintiff must be filed on or before December 19, 2018. (ECF No. 5.) Plaintiff amended her complaint as a matter of right on December 15, 2018, which, as reflected in the Court's December 17, 2018 order (ECF No. 8), mooted Kashl's pending motion to dismiss and took the motion off of the February 1, 2019 calendar. At that point, the Court also advised that the original hearing date for

16

CASE NO. 18cv2581 GPC NLS

February 1, 2019 would not be vacated altogether because Defendant's motion to declare Plaintiff a vexatious litigant was unaffected by Plaintiff's amended complaint. (*Id.*)

Plaintiff did not file an opposition to the motion to declare her a vexatious litigant before the court-prescribed filing deadline. Failing to do so not only violated Civil Rule 7.1(f)(3)(a)'s requirement that Plaintiff either oppose the motion or file a statement of opposition, but also brought her within the purview of Civil Local Rule 7.1(f)(3)(c), which provides that failure to timely oppose a motion may constitute consent to granting the motion. *See People of the State of California v. Manos*, No. 15CV1048-LAB (BGS), 2015 WL 12672152, at *1 (S.D. Cal. June 11, 2015). This failure to oppose was remarked upon by Kashl, who asked the Court to grant its motion in light of Plaintiff's silence. (ECF No. 11.)

While in certain circumstances the Court has construed the failure to oppose as consent to grant the motion, the Court is not prepared to do so in this instance. As the Ninth Circuit has repeatedly emphasized, "[r]estricting access to the courts is . . . a serious matter," especially because it implicates "a fundamental right protected by the Constitution." *Ringgold-Lockhart*, 761 F.3d 1061 (quoting *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998)). Indeed, integral to the proper entry of a vexatious litigant order is whether the litigant in question has been afforded proper notice of the potential order, and given an opportunity to be heard. *Molski v. Evergreen Dynasty*, 500 F.3d at 1058 ("The first factor under *De Long* is whether Molski was given notice and an opportunity to be heard before the district court entered the pre-filing order. This is a core requirement of due process.")

In *Molski*, the Ninth Circuit found the notice and opportunity to be heard factor to be satisfied where Molski had been served with opposing counsel's motion to declare him a vexatious litigant, and where he "had the opportunity to oppose to the motion both in writing and at a hearing." *Id.* At the same time, *Molski* also suggested that neither an actual response by the litigant nor a hearing on the issue was mandatory if the litigant had

17

been given an opportunity to brief the issue (but failed to take advantage of the opportunity). *See id.* (citing *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) ("[A]n opportunity to be heard does not require an oral or evidentiary issue," since "[t]he opportunity to brief the issue fully satisfies due process requirements."))

Here, although she was given an opportunity to respond, Plaintiff never submitted opposition papers or otherwise acknowledged the potential consequences of her failing to do so. Rather than proceeding forward without the benefit of adversarial briefing, and out of an abundance of caution, the Court will direct Plaintiff to show cause why she should not be deemed a vexatious litigant and subject to a pre-filing order in the United States District Court for the Southern District of California.[4] Plaintiff's response to this order to show cause ("OSC") shall be filed **no later than February 1, 2019.** Plaintiff is directed to consider the five-factor test espoused by the Second Circuit in *Safir* and approved of by the Ninth Circuit in *Molski v. Evergreen Dynasty*.

## II.  Conclusion

For the foregoing reasons, Kashl's motion to dismiss the first amended complaint is **denied**. (ECF No. 9). The Court **defers** ruling on Kashl's motion requesting order declaring plaintiff a vexatious litigant in light of Plaintiff's failure to oppose. (ECF No. 3.) In the meantime, the Court **orders Plaintiff to show cause** why she should not be labeled a vexatious litigant by **February 1, 2019**. The motion hearing set for **February 1, 2019** is accordingly continued to **April 5, 2019**.

---

[4]  Similar circumstances presented in *Azam v. Fed. Deposit Ins. Corp.*, No. CV 15-3930-JLS (ASX), 2016 WL 4150762, at *8 (C.D. Cal. July 19, 2016). In *Azam*, the defendant, FDIC, filed and served Azam with a motion to label her a vexatious litigant. Azam did not timely file an opposition and subsequently failed to provide good cause to support her request for an extension. *Id.* Nonetheless, "given the nature of th[e] motion, and [the defendant's] requested relief," the court provided Azam a second opportunity to file an opposition brief. *Id.*

18

Dated: January 25, 2019

Hon. Gonzalo P. Curiel
United States District Judge